Randall A. Peterman, ISB No. 1944
Melodie A. McQuade, ISB No. 9433
GIVENS PURSLEY LLP
601 West Bannock Street
Post Office Box 2720
Boise, Idaho  83701
Telephone  (208) 388-1200
Facsimile  (208) 388-1300
rap@givenspursley.com
melodiemcquade@givenspursley.com
014448-0002

Attorneys for Defendant

UNITED STATES BANKRUPTCY COURT

DISTRICT OF IDAHO

| | |
|---|---|
| In Re:<br><br>FARMERS GRAIN, LLC,<br><br>          Debtor. | Case No. 17-00450-TLM<br>Chapter 7 |
| NOAH G. HILLEN, Trustee,<br><br>          Plaintiff,<br><br>vs.<br><br>CLARICH FARMS, LLC,<br><br>          Defendant. | Adversary No. 19-06009-TLM |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

I.      INTRODUCTION................................................................................1

II.     STATEMENT OF FACTS.................................................................2

     A.    Defendant's Past Business Relationship with Farmers Grain.........................2

     B.    Defendant's Business Relationship with Farmers Grain in 2016-2017. ..........4

     C.    Procedural History of this Bankruptcy and Adversary Action.......................8

III.    LEGAL STANDARD .......................................................................9

IV.    ARGUMENT....................................................................................10

     A.    The Trustee bears the burden of showing the Wheat Check constitutes an avoidable preference...................................................................10

     B.    The Trustee cannot establish a preference because Defendant was not a creditor of Farmers Grain when the Wheat Check was paid.........................12

          1.    Under applicable UCC provisions, a statutory bailment relationship arises when goods like the Wheat are delivered to a warehouse by a bailor............................................................12

          2.    The undisputed facts establish that Defendant had a statutory bailment relationship with Farmers Grain.............................14

     C.    The Trustee cannot establish a preference because the Wheat Check was not made for or on account of an antecedent debt...........................18

     D.    If Defendant became a creditor of Farmers Grain, Defendant was a secured creditor by virtue of having a statutory lien. Thus, the Wheat Check is not an avoidable transfer under 11 U.S.C. § 547(c)(6).....................19

     E.    If Defendant became a creditor of Farmers Grain, Defendant is permitted to retain the Wheat Check, which was paid by Farmers Grain in the parties' ordinary course of business and is not an avoidable transfer under 11 U.S.C. § 547(c)(2). ...........................................................21

          1.    Defendant meets the Section 547(c)(2)(A) factors based on the parties' Storage Procedure history.......................................22

          2.    Defendant meets the Section 547(c)(2)(B) factors based on the commonly used Storage Procedure by Farmers Grain......................23

14955649.1

**F.**      **If Defendant became a creditor of Farmers Grain, Defendant is permitted to retain the Wheat Check, which was a contemporaneous exchange for new value and is not an avoidable transfer under 11 U.S.C. § 547(c)(1). .......24**

**V.      CONCLUSION** .................................................................................................**25**

**TABLE OF CONTENTS - ii**

14955649.1

COMES NOW Defendant Clarich Farms, LLC ("Defendant"), by and through its counsel of record, Givens Pursley LLP, and hereby submits this Memorandum in Support of Defendant's Motion for Summary Judgment.

## I.      INTRODUCTION

Defendant moves the Court to enter summary judgment in its favor because there is no genuine issue of material fact as to the events that transpired between Defendant, a wheat farmer, and Farmers Grain, LLC ("Farmers Grain"), which operated a grain storage facility for many years before this bankruptcy. Noah Hillen, the Chapter 7 trustee ("Trustee"), has asserted that a check in the amount of $65,229.94 paid to Defendant on January 14, 2017, a few months before the bankruptcy petition was filed, constitutes an avoidable preference.

The Trustee cannot meet his burden of proving all elements required by 11 U.S.C. § 547.  Here, the Trustee cannot prove that property of Farmers Grain was transferred to or for the benefit of a creditor, for or on account of an antecedent debt. The relationship between Farmers Grain and Defendant was not a sales relationship. Instead, it was a statutory bailment relationship in which Farmers Grain stored Defendant's wheat, and later sold it at Defendant's direction. Farmers Grain immediately paid Defendant for the wheat, so there was no payment for an antecedent debt.

Additionally, Defendant has multiple defenses in the event the Court determines that the parties had a creditor-debtor relationship and that all elements of the preference action are met.  First, if Farmers Grain became indebted to Defendant when the wheat was sold on January 14, 2017 (making Defendant a creditor), Defendant had a statutory lien when the payment was made, which defeats the preference action.  Second, the storage and sale of the wheat, and the corresponding payment, was consistent with the parties' ordinary course of business and thus was

**MEMORANDUM IN SUPPORT OF DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT - 1**

not a preference.  Third and finally, the sale of the wheat and the corresponding payment constituted a contemporaneous exchange, again defeating the Trustee's preference action. For these reasons, the Court should grant summary judgment in favor of Defendant.

## II.    STATEMENT OF FACTS[1]

### A.    Defendant's Past Business Relationship with Farmers Grain.

1.    For years, Farmers Grain operated as a grain storage facility in Nyssa, Oregon.  Declaration of Karl Clarich of Clarich Farms, LLC in Support of Defendant's Motion for Summary Judgment ("Defendant Dec."), ¶ 2.

2.    In general, Farmers Grain both purchased and stored commodities. Declaration of Chester Millsap in Support of Defendant's Motion for Summary Judgment ("Millsap Dec."), ¶ 2.

3.    Defendant delivered wheat and other commodities for storage to Farmers Grain from 2015 to 2017. Defendant Dec., ¶ 2.

4.    In each previous case where Defendant delivered a commodity to Farmers Grain for storage, the Defendant would be given a scale ticket, a final settlement statement, a check, and a storage invoice, all as identified below.  Defendant would receive the scale ticket from Farmers Grain upon delivery of Defendant's commodity to Farmers Grain for storage, and Defendant would receive the last three documents when the storage relationship ended.  In the past, those documents would be given to Defendant by Farmers Grain at the times set forth below.  This happened invariably when Defendant delivered commodities for storage to Farmers Grain over a period of years.  Defendant Dec., ¶ 3.

---

[1] This Statement of Facts tracks the Statement of Undisputed Material Facts in Support of Defendant's Motion for Summary Judgment, submitted concurrently herewith.

**MEMORANDUM IN SUPPORT OF DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT - 2**

5.      As set forth in the Millsap Dec., Farmers Grain retained a copy of the scale ticket to document the delivered commodity.  If the commodity was not previously contracted or priced upon delivery, then usually the commodity would be kept at Farmers Grain until the farmer directed its sale.  If not priced within approximately 60 days of delivery a "storage" (a common grain elevator term) fee was assessed upon the unpriced commodity until such time as the farmer ordered the sale. This is what occurred with respect to Defendant. Millsap Dec., ¶ 3; Defendant Dec., ¶ 4.

6.      Nearly every day, Farmers Grain employee Chester Millsap tracked the market price for unpriced commodities that had been delivered to Farmers Grain. Farmers would then call Mr. Millsap from time to time to determine the price of their unpriced commodity on a given day. Millsap Dec., ¶ 4.

7.      When Farmers Grain received a sell order from a farmer, normally in an email, Mr. Millsap would advise Galen Jantz.  Based upon the sale order from the farmer, Farmers Grain would sell the commodity as directed, and would issue a final settlement statement (reflecting a summary of the scale tickets for the commodity, the sales price, and deductions for storage).  Defendant would also receive the check and storage invoice.  Defendant's receipt of those documents would end Defendant's business relationship with Farmers Grain as to the particular commodity. Defendant Dec., ¶ 4; Millsap Dec., ¶ 5.

8.      During all of these transactions over an extended period of years, the same storage procedure ("Storage Procedure") would be followed in each case with respect to Defendant, as outlined above.  It never varied, and it always involved the scale tickets, the final settlement statement, storage invoice, and the check, as indicated above. Defendant Dec., ¶¶ 5-6; Millsap Dec., ¶¶ 5-7.

**MEMORANDUM IN SUPPORT OF DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT - 3**                                    14955649.1

9.      Defendant understood the Storage Procedure to establish the parties' common agreement for storage dealings between Farmers Grain and Defendant.  It was always the process used by Farmers Grain as to stored commodities with delayed pricing, and never varied during the years where Defendant stored commodities at Farmers Grain. Defendant Dec., ¶ 6; Millsap Dec., ¶ 7.

10.      In all of such storage transactions, Defendant dealt with Mr. Millsap.  In all such transactions the Storage Procedure was always used. Defendant Dec., ¶ 7; Millsap Dec., ¶ 9.

**B.      Defendant's Business Relationship with Farmers Grain in 2016-2017.**

11.      During 2016, Defendant repeatedly delivered wheat ("Wheat") for storage to Farmers Grain on those dates set forth in the scale tickets ("Scale Tickets").  Those Wheat deliveries were for storage and not for sale. Defendant Dec., ¶ 9 and Ex. A.

12.      The following is an example of one of the Scale Tickets:

Defendant Dec., Ex. A at FG 35835.

**MEMORANDUM IN SUPPORT OF DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT - 4**

14955649.1

13.     The Wheat was normally received by, and the Scale Tickets were normally issued to Defendant by Mr. Millsap on the date of delivery of the Wheat.  They were in the form traditionally used by Farmers Grain over prior years. Defendant Dec., ¶ 9.

14.     Defendant's Wheat was stored at Farmers Grain until Defendant requested it be sold by Farmers Grain. Defendant Dec., ¶ 10.

15.     After storing the Wheat with Farmers Grain, Defendant would check the market price of wheat from time to time.  There were instances where Defendant would call Mr. Millsap for the price of wheat that he was quoting on behalf of Farmers Grain. Defendant normally requested Farmers Grain to sell the stored commodity by placing a phone call to Mr. Millsap. Defendant Dec., ¶ 11.

16.     Consistent with Defendant's usual practice, on January 14, 2017, Defendant telephoned Mr. Millsap, confirmed the market price for wheat, and asked that the Wheat be sold. Defendant Dec., ¶ 12.

17.     Within one or two days of Defendant's phone call requesting the sale of the Wheat, Defendant received confirmation that Defendant's Wheat had been sold, under the Final Settlement Statement, Check and the Storage Invoice as identified below.  The Final Settlement Statement confirms that the Wheat was sold on January 14, 2017.  Defendant Dec., ¶ 13.

18.     Defendant always confirmed all of Defendant's Scale Tickets when the stored commodity was sold, and when Farmers Grain provided Defendant a final scale ticket settlement statement ("Final Settlement Statement").  The Scale Tickets and Final Settlement Statement were prepared by Farmers Grain, and both correlated in all respects. Defendant Dec. ¶ 14 and Exs. A and B.

**MEMORANDUM IN SUPPORT OF DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT - 5**

19.    The Final Settlement Statement for the Wheat provided a listing of all Scale Tickets in detail, and reflected (a) the date of sale; (b) the gross proceeds from the sale of the Wheat; (c) a deduction for storage costs and sales commission, marked "storage/sales commissions;" (d) a complete summary of all Scale Tickets, documenting all deliveries of stored wheat; (e) a final net sales price; and (f) other information. Defendant Dec., ¶ 14 and Ex. B.

20.    The Final Settlement Statement for the Wheat demonstrates that the gross sales price of the Wheat was $66,816.13, and the storage/commission costs were $1,586.19, for a "net value" of $65,229.94.  The Final Settlement Statement for the Wheat contained a summary at the end of the document, as follows:

| Net TON Paid: 594.82 | |
|---|---|
| Settlement Summary | |
| Gross Owed | $66,816.13 |
| Discount | $0.00 |
| Drying | $0.00 |
| Storage / Serv | $1,586.19 |
| Sales Tax | $0.00 |
| Check-Off | $0.00 |
| Excise/Indemn | $0.00 |
| Advances | $0.00 |
| Freight | $0.00 |
| Other Charges | $0.00 |
| **Net Paid** | **$65,229.94** |
| **Check Number** | **9179** |

Defendant Dec., ¶ 14 and Ex. B at DEFENDANT0002.

21.    Defendant understood the Final Settlement Statement to be the final accounting of all income and expenses relative to the stored Wheat which had been, upon Defendant's direction, sold by Farmers Grain.  Defendant Dec., ¶ 14 and Ex. B.

22.    At the time of issuance of the Final Settlement Statement, Farmers Grain would also send Defendant a net proceeds check from the sale of the commodity. The check issued upon sale of a stored commodity would always reflect the gross sales price of Defendant's stored

**MEMORANDUM IN SUPPORT OF DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT - 6**

commodity, a charge for storage fees, and a charge for sales commission.  The check would always reflect the net value of the stored commodity that had been sold at Defendant's direction. Defendant Dec., ¶¶ 16, 18.

23.     Consistent with that practice, Farmers Grain sent Defendant a check dated January 14, 2017, in the amount of $65,229.94 for the sale of the Wheat ("Wheat Check"), numbered 9179 consistent with the check number identified on the summary shown above.  The Wheat Check contains a reference, inserted by Farmers Grain, which reads: "2016 Wheat Settlement 726 16W 1192."  Defendant Dec., ¶ 16 and Ex. C.

24.     When Defendant received a check from Farmers Grain for the sale of any commodity, Defendant would generally cash it within a period of several days from receipt thereof. Defendant Dec., ¶ 17.

25.     Consistent with Defendant's deposit practice, the Wheat Check cleared the account of Farmers Grain on January 23, 2017.  Declaration of Randall A. Peterman in Support of Motion for Summary Judgment ("Peterman Dec."), Ex. A.

26.     Consistent with the Storage Procedure, at the time of issuance of the Final Settlement Statement for the Wheat, Farmers Grain also sent Defendant a storage invoice entitled Wheat Settlement, summarizing the storage charges for the Wheat, which were deducted from the gross price for the Wheat when it was sold ("Storage Invoice").  Defendant Dec., ¶ 20 and Ex. D.

27.     Defendant's receipt of the Final Settlement Statement, Storage Invoice, and Wheat Check terminated Defendant's relationship with Farmers Grain as to the storage and later sale of the Wheat. Defendant Dec., ¶ 22.

**MEMORANDUM IN SUPPORT OF DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT - 7**

28.     Defendant always understood the commodities stored at the Farmers Grain storage facility to be Defendant's property, so long as Defendant paid storage fees for it.  No one at Farmers Grain ever said that the commodities belonged to Farmers Grain. Defendant was never asked by Farmers Grain to pay any storage fees until the eventual sale of the commodity at the end of the process, when the Final Settlement Statement and Storage Invoice were issued, reflecting storage charges. Defendant Dec., ¶ 24.

29.     The Storage Procedure was used not only in the storage of the Wheat, but was invariably used in storage relationships between Farmers Grain and Defendant in years past.  Defendant Dec., ¶ 5; Millsap Dec., ¶¶ 7, 9.

30.     Defendant heard nothing regarding the storage and sale of the Wheat until the above-captioned adversary proceeding was filed.  Defendant Dec., ¶ 23.

**C.     Procedural History of this Bankruptcy and Adversary Action.**

31.     Farmers Grain filed a Chapter 11 bankruptcy petition on April 18, 2017. 17-450-TLM, CR 1.

32.     On August 3, 2017, Rabo filed a motion to convert the case to a chapter 7, and to dismiss or appoint a chapter 11 trustee (17-450-TLM, CR 74), which was granted by the Court on August 15, 2017 (17-450-TLM, CR 91).

33.     Noah Hillen was then appointed as the Chapter 7 trustee (previously defined as "Trustee").  17-450-TLM, CR 93.

34.     There ensued substantial activity in the Chapter 7 case, involving assumption and rejection of executory contracts, sale of real and personal property assets, and a Bankruptcy Code Section 557 proceeding.  The Trustee retained with court approval two different attorneys (Joseph Meier (17-450-TLM, CR 98), then later Jed Manwaring (17-450-TLM, CR 265),

**MEMORANDUM IN SUPPORT OF DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT - 8**

an accountant (Roger Clubb (17-450-TLM, CR 149) and a financial analyst, Maggie Lyons (17-450-TLM, CR 218).  All such professionals were paid from estate assets.

35.     The Trustee filed a motion to approve his Section 557 report in the Farmers Grain bankruptcy.  17-450-TLM, CR 238.  That motion was granted.

36.     In the Section 557 proceeding the Trustee distributed millions of dollars of grain or the proceeds of grain to different farmers.  17-450-TLM, CR 246.

37.     On March 15, 2019, the Trustee filed his Complaint in the above-captioned adversary proceeding.  CR 1.

38.     On March 19, 2019, the Trustee filed his First Amended Complaint.  CR 6.  The sole cause of action in the Amended Complaint is a preference voiding action, related to Farmers Grain's payment to Defendant of the Wheat Check.

39.     On June 28, 2019, Defendant filed its Amended Answer to First Amended Complaint.  CR 15.

### III.    LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure, made applicable in bankruptcy adversary proceedings by Rule 7056 of the Federal Rules of Bankruptcy Procedure, governs summary judgment motions." *DeVries v. Clark* (*In re Clark*), Adv. No. 13–06034–TLM, 2014 WL 174935, at *3 (Bankr. D. Idaho, Jan. 10, 2014).  That rule provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

By way of procedure, the moving party "has both the initial burden of proof and the ultimate burden of persuasion on a motion for summary judgment." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).  Once the moving party meets its

initial burden, then the opponent must provide evidence establishing a genuine issue of material

fact for trial. Fed. R. Civ. P. 56(c); *see also Poole v. Davis* (*In re Davis*), 2012 WL 4831494 at *2

(Bankr. D. Idaho, Oct. 10, 2012) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)).

## IV.   ARGUMENT

### A.   The Trustee bears the burden of showing the Wheat Check constitutes an avoidable preference.

The Trustee asserts the Wheat Check constitutes an avoidable transfer pursuant to

11 U.S.C. §§ 547(b) and 550(a). CR 6, ¶¶ 5-7. 11 U.S.C. 550(a) provides for liability of a transferee

of an avoided transfer:

> **(a)** Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from--
> > **(1)** the initial transferee of such transfer or the entity for whose benefit such transfer was made; or
> > **(2)** any immediate or mediate transferee of such initial transferee.

11 U.S.C. § 550.

11 U.S.C. § 547(b) provides what must be shown before a transfer can be avoided:

> **(b)** Except as provided in subsections (c) and (i) of this section, the trustee may avoid any transfer of an interest of the debtor in property--
> > **(1)** to or for the benefit of a creditor;
> > **(2)** for or on account of an antecedent debt owed by the debtor before such transfer was made;
> > **(3)** made while the debtor was insolvent;
> > **(4)** made--
> > > **(A)** on or within 90 days before the date of the filing of the petition; or
> > > **(B)** between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
> > **(5)** that enables such creditor to receive more than such creditor would receive if--
> > > **(A)** the case were a case under chapter 7 of this title;
> > > **(B)** the transfer had not been made; and
> > > **(C)** such creditor received payment of such debt to the extent provided by the provisions of this title.

**MEMORANDUM IN SUPPORT OF DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT - 10**

11 U.S.C. § 547(b).

> The Ninth Circuit has explained:
>
> A bankruptcy trustee may recover property for the benefit of the debtor's estate if there (1) was a transfer; (2) of property of the debtor; (3) to or for the benefit of a creditor; (4) for or on account of an antecedent debt; (5) made while the debtor was insolvent; (6) made on or within ninety days before the date of the filing of the debtor's bankruptcy petition; (7) that enables the creditor to receive more than he would receive if the transfer had not been made and the debtor's estate liquidated according to the provisions of the bankruptcy code.

*In re Bullion Reserve of N. Am.*, 836 F.2d 1214, 1216–17 (9th Cir. 1988) (citing 11 U.S.C. § 547(b)). "The burden of proving the existence of these elements is on the bankruptcy trustee." *Id.* at 1217.

Based on the undisputed facts, the Wheat Check does not constitute an avoidable preference. Defendant and Farmers Grain did not have a creditor/debtor relationship. Instead, there was a bailment relationship. Thus, the Trustee cannot meet the statutory requirements that property of the debtor was transferred to or for the benefit of a creditor, for or on account of an antecedent debt.

Additionally, Defendant has defenses to the Trustee's preference action. First, even if the Court were to determine that Defendant became a creditor of Farmers Grain at the time the Wheat was actually sold (the earliest point in time a creditor/debtor relationship could have arisen based on the record), Defendant was a secured creditor by virtue of having a statutory lien. Thus, the Wheat Check is not an avoidable transfer under 11 U.S.C. §547(c)(6). Second, if Defendant became a creditor of Farmers Grain, Defendant is permitted to retain the Wheat Check, which was made by Farmers Grain in the ordinary course of business and is not an avoidable transfer under

11 U.S.C. § 547(c)(2).   Third, the sale of the Wheat and the payment of the Wheat Check constituted a contemporaneous exchange, again defeating the preference action.

**B.    The Trustee cannot establish a preference because Defendant was not a creditor of Farmers Grain when the Wheat Check was paid.**

With respect to the Wheat Check, the Trustee must first show "there (1) was a transfer; (2) of property of the debtor; (3) to or for the benefit of a creditor; (4) for or on account of an antecedent debt . . . ." *In re Bullion Reserve of N. Am.*, 836 F.2d at 1216–17; 11 U.S.C. § 547(b)(1)-(2). The Trustee cannot meet this burden on the first few elements of the preference action.

**1.    Under applicable UCC provisions, a statutory bailment relationship arises when goods like the Wheat are delivered to a warehouse by a bailor.**

Oregon's version of Chapter 7 of the Uniform Commercial Code is codified at O.R.S. Title 8, Chapter 77, which is entitled "Warehouse Receipts, Bills of Lading and other Documents of Title." Chapter 77 provides the applicable law regarding the relationship between the Defendant and Farmers Grain as to the parties' Storage Procedure and related documentation. The official comment on one of the general provisions of that statute makes this clear:  "[t]his Article deals with a class of commercial paper representing commodities in storage or transportation."  UCC Comment to O.R.S. § 77.1040.

Chapter 77 creates a statutory bailment relationship between the parties, with Defendant acting as bailor, and Farmers Grain acting as a "Warehouse" and/or "Bailee."  O.R.S. § 77.1020(1)(a) ("'Bailee' means a person that by a warehouse receipt, bill of lading or other document of title acknowledges possession of goods and contracts to deliver them."); O.R.S. § 77.1020(1)(L) ("'Warehouse' means a person engaged in the business of storing goods for hire.").

**MEMORANDUM IN SUPPORT OF DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT - 12**

A warehouse may issue warehouse receipts. O.R.S. § 77.2010(1). With respect to

the form of warehouse receipts:

> (1) A warehouse receipt need not be in any particular form.
> (2) Unless a warehouse receipt provides for each of the following, the warehouse is liable for damages caused to a person injured by its omission:
>
> > (a) A statement of the location of the warehouse facility where the goods are stored;
> > (b) The date of issue of the receipt;
> > (c) The unique identification code of the receipt;
> > (d) A statement whether the goods received will be delivered to the bearer, to a named person, or to a named person or its order;
> > (e) ***The rate of storage and handling charges, unless goods are stored under a field warehousing arrangement, in which case a statement of that fact is sufficient on a nonnegotiable receipt***;
> > (f) A description of the goods or the packages containing them;
> > (g) The signature of the warehouse or its agent;
> > (h) ***If the receipt is issued for goods that the warehouse owns, either solely, jointly or in common with others, a statement of the fact of that ownership;*** and
> > (i) A statement of the amount of advances made and of liabilities incurred for which the warehouse claims a lien or security interest, unless the precise amount of advances made or of liabilities incurred, at the time of the issue of the receipt, is unknown to the warehouse or to its agent that issued the receipt, in which case a statement of the fact that advances have been made or liabilities incurred and the purpose of the advances or liabilities is sufficient.

O.R.S. § 77.2020(1)-(2) (emphasis added). As discussed in greater detail below, the Scale Tickets

contain no statements regarding the emphasized statutory language.

A warehouse receipt fulfills three important functions:

> Shipment and storage of goods comprise essential parts of many commercial transactions. Individuals or organizations engaged in the business of transporting goods (carriers) perform the majority of goods shipments. Likewise, the primary providers of storage for goods are individuals or organizations (warehousers) engaged in the business of warehousing goods. When carriers or warehousers receive goods for shipment or storage, they issue documents of title to the shippers or storers.

**MEMORANDUM IN SUPPORT OF DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT - 13**

> Documents of title perform three basic functions: (1) they serve as receipts for goods which have been delivered to carriers or warehousers; (2) they constitute contracts of storage between storers and warehousers or contracts of shipment between shippers and carriers; and (3) they represent the goods.

3 UCC Trans Gd § 25:1, *Overview; Scope of Chapter*.

"Most warehousing is for an indefinite term, the bailor [Defendant] being entitled to delivery [from Farmers Grain] on reasonable demand."  UCC Comment to O.R.S. § 77.2060; *see generally* O.R.S. § 77.2060 (providing procedure for termination of storage of goods). Additionally, the Oregon statutes provide that fungible goods (which would include wheat) may be commingled without consequence to either party.  O.R.S. § 77.2070.

Chapter 77 imposes liability upon the warehouse if it is negligent in caring for the stored commodity.  O.R.S. § 77.2040.  It also creates in favor of the warehouse a lien against the bailor on the goods covered by a warehouse receipt or storage agreement for storage and related charges incurred by the warehouse. O.R.S. § 2090(1). That lien may be satisfied (as it was with respect to the Wheat) from the proceeds of sale of the stored commodity, when sold.  O.R.S. § 77.2060(5).  The lien may also be enforced via a commercially reasonable sale of the goods. O.R.S. § 77.2100.

### 2. The undisputed facts establish that Defendant had a statutory bailment relationship with Farmers Grain.

The statutory provisions of Chapter 77 are consistent with the parties' Storage Procedure and storage of the Wheat by Farmers Grain, and bely any claim by the Trustee that a sales relationship existed between the parties—yet that is what the Trustee maintains here.  The Trustee has asserted that when each delivery of the Wheat was made, as evidenced by the Scale Tickets and Final Settlement Statement, the Wheat was *sold* to Farmers Grain. The Trustee's position is contradicted by the record, which shows instead that the Wheat was delivered for

**MEMORANDUM IN SUPPORT OF DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT - 14**

storage until such time as Defendant ordered the sale of the Wheat based on the market price of the day.

For the Trustee's position (that a sale rather than a storage of the Wheat was involved here) to be true, that position would nullify the lien right granted the creditor warehouse in the stored Wheat. Farmers Grain could not have a lien right in the property of its own estate; it can only be granted a lien right as to the property of another party (here, the Defendant). The statutory existence of the lien rights set forth in Chapter 77 contradicts the Trustee's argument that the Wheat was sold to Farmers Grain as each delivery was made.

Defendant had a longstanding relationship with Farmers Grain, and the parties' dealings invariably followed the Storage Procedure. As outlined in detail above:

- Defendant delivered the Wheat to Farmers Grain on multiple dates in July 2016, receiving the Scale Tickets for each delivery;

- Defendant was not paid for the Wheat in 2016;

- Defendant ordered the sale of the Wheat on January 14, 2017, after being told the market price of the day by Farmers Grain;

- Right after Defendant's sale order, Farmers Grain paid Defendant for the Wheat, after deducting "storage / serv" costs in the amount of $1,586.19; and

- The storage and sale procedure with respect to the Wheat was consistent with how the parties always transacted their business.

The documents critical to the Storage Procedure—the Scale Tickets, the Wheat Check, the Final Settlement Statement, and the Storage Invoice are all self-authenticating under the UCC and the Federal Rules of Evidence. *See, e.g.*, O.R.S. § 71.3070; Fed. R. Evid. 902(9) (commercial paper is self-authenticating).

In light of these clear facts, the Trustee's position that each Wheat delivery by Defendant constituted a sale to Farmers Grain must fail. Farmers Grain did not pay Defendant for

**MEMORANDUM IN SUPPORT OF DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT - 15**

its Wheat after each delivery, which would evidence that a sale had occurred. Instead, Farmers

Grain issued one of the Scale Tickets on the date of delivery, which provided a record of the

amount of Wheat delivered to Farmers Grain on a given day. According to the Final Settlement

Statement, the first delivery of the Wheat occurred on July 9, 2016. Defendant Dec., Ex. B at

DEFENDANT0001. The Wheat was delivered throughout the month of July 2016, and up until

July 20, 2016. *Id.*

If the Wheat was in fact sold at the time of delivery as the Trustee contends, there

would be no reason for the Final Settlement Statement, which aggregates the Scale Tickets and

provides a payment related to the Wheat on a collective basis. And, if each delivery related to an

individual sale, there would be a statement and corresponding payment for each delivery. These

documents can have only one interpretation—that the stored Wheat was sold at the end of the

storage transaction, and that the final amount payable from Farmers Grain was determined at that

time.

Similarly, if the Wheat was in fact sold at the time of delivery, there would be no

reason for the storage deduction as shown on the Final Settlement Statement, or the Storage Invoice

which identifies storage charges for the Wheat on a collective basis ("$.03 per bu per mon").

Furthermore, Farmers Grain's Scale Tickets do not contain the statement of

ownership required by O.R.S. § 77.2020(2)(h), or the rate of storage charges or alternate

arrangement as required by O.R.S. § 77.2020(2)(e). Instead, the Scale Tickets are blank as to this

information on the bottom right of each ticket:

**MEMORANDUM IN SUPPORT OF DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT - 16**

Amalgamated - Farmers Grain LLC      P.O. Box 1568      Main St.      Nyssa, OR 97913

| UNLOAD DATE: 07/20/2016 | SCALE TICKET | TICKET #: 11000171 |
| "NOT NEGOTIABLE" | | "COMPUTER GENERATED" |

| TO: | Amalgamated - Farmers Grain, LLC | FROM: | Clarich Farms, LLC (CLAFA) |
| | Main St | | 4181 Riverview Pl |
| | Nyssa, OR 97913 | | Parma, ID 83660 |

| COMMODITY: | SWW Whole Wheat | DRIVER: | (OFF) JACKIE |
| TICKET TYPE: | 1 - TICKET (Inbound) | TRACTOR: | M5 |
| LADING #: | PON | BIN: | TRAILER: | AXLES: |
| CARRIER: | | U.S. GRADE: |

| GROSS WEIGHT: | 55,880 Lbs *** MAN WT *** | MOISTURE : | 9.90 | OPEN ____ |
| TARE WEIGHT: | 24,080 Lbs | TEST WT : | 58.80 | CONTRACT ____ |
| NET WEIGHT: | 31,800 Lbs (15.900 tons) | FM : | 0.00 | STORAGE ____ |
| GROSS UNITS: | 15.90 TON | DOCKAGE : | 0.00 | PRICE LATER ____ |
| NET UNITS: | 15.90 TON | DAMAGE : | 0.00 | GRAIN BANK ____ |
| | | | | PRICE ____ |

COMMENTS:

Driver _Jackie Wk_____ Date_____

Received by_____ Date_____

* ORIGINAL *

Defendant Dec., Ex. A at FG 35835. Under these circumstances, "the warehouse is liable for damages caused to a person injured by [the information's] omission[.]" O.R.S. § 77.2020(2). Accordingly, to the extent Farmers Grain is now asserting ownership of the Wheat during the time it was stored, Farmers Grain is statutorily liable to Defendant for any resulting damages because Farmers Grain did not include the required information on the Scale Tickets. Farmers Grain is, essentially, estopped from making the ownership argument by virtue of O.R.S. § 77.2020(2).

Finally, under the Trustee's sale upon delivery theory, the Trustee apparently believes that Defendant waited six months to be paid for its Wheat, with no written agreement for any sort of delayed payment of that nature. That is also inconsistent with the record. Farmers Grain paid Defendant for all of the Wheat immediately upon receiving Defendant's order to sell the Wheat on January 14, 2017. If the Trustee maintains that the stored Wheat involved a contract of sale, that fact must be proven under O.R.S. Chapter 72, 72A or 75. *See* O.R.S. § 77.5090. If (as the Trustee maintains) the Wheat had been sold rather than stored with Farmers Grain, a different Oregon statutory framework would apply (O.R.S. 87.750 *et seq*., as discussed below with respect to Defendant's defenses) and the Trustee would be required to produce a contract of sale as to the

**MEMORANDUM IN SUPPORT OF DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT - 17**

14955649.1

stored Wheat, which he has not.  Furthermore, the Trustee cannot overcome the requirement that any contract for the sale of goods at a price exceeding $500.00 must be in writing to be enforceable. O.R.S. § 72.2010(1).

The documents and testimony simply do not support a conclusion that the Wheat was sold to Farmers Grain at the time of delivery. There was no sales transaction; as to the Wheat, a storage and bailment relationship existed.  For Farmers Grain to establish that sales transaction occurred, it would have to be proven, and there is no such proof here. Defendant was not a creditor of Farmers Grain.  Thus, the Trustee cannot meet the statutory requirements that property of the debtor was transferred to or for the benefit of a creditor.

> C.    **The Trustee cannot establish a preference because the Wheat Check was not made for or on account of an antecedent debt.**

"Section 547(b)(2) allows recovery of transfers made 'on account of an antecedent debt owed by the debtor before such transfer was made....' In other words, '[i]f the debt was created before the transfer occurred, the debt is antecedent.'" *In re Farson*, 387 B.R. 784, 791 (Bankr. D. Idaho 2008) (citation omitted) (finding an antecedent debt with respect to monthly payments made in the year leading to the petition date on August 30, 2005, pursuant to a contract dated June 8, 2003). "Although 'antecedent debt' is not defined in the Code, it may be described as pre-existing or prior debt, so as to preclude the avoidance of a transfer made simultaneous with or prior to the extension of credit or transfer of value to the debtor." *In re W. World Funding, Inc.*, 54 B.R. 470, 476 (Bankr. D. Nev. 1985) (citing 2 *Norton Bankruptcy Law and Practice* § 32.07 (1981 ed.)); *see also* 11 U.S.C. § 101(12) ("The term "debt" means liability on a claim."); 11 U.S.C. § 101(10) (creditor means an entity with a claim against the debtor).

In this case, Defendant gave Farmers Grain the order to sell the stored Wheat on January 14, 2017. On the same date, Farmers Grain issued the Final Settlement Statement, the

**MEMORANDUM IN SUPPORT OF DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT - 18**

14955649.1

Wheat Check, and the Storage Invoice. When the Wheat Check was issued, there was no prior

existing debt created by the Defendant's delivery of stored grain and receipt of the Scale Tickets.

The only "debt" was contemporaneous in nature and created when Farmers Grain, at the direction

of the Defendant, sold the grain to a third party, and contemporaneously issued the Defendant the

Final Settlement Statement and the Wheat Check, which was immediately cashed by the Defendant

(the check cleared on January 23, 2017). Peterman Dec., Ex. A.

These documents together establish conclusively that there was no antecedent debt

involved in this case, and that a contemporaneous exchange occurred.  Under these facts and the

law discussed above, the Trustee cannot show "there (1) was a transfer; (2) of property of the

debtor; (3) to or for the benefit of a creditor; (4) for or on account of an antecedent debt . . . ." *In

re Bullion Reserve of N. Am.*, 836 F.2d at 1216–17; 11 U.S.C. § 547(b)(1)-(2). Accordingly, the

Trustee's preference action must fail.

> **D.      If Defendant became a creditor of Farmers Grain, Defendant was a
> secured creditor by virtue of having a statutory lien. Thus, the Wheat
> Check is not an avoidable transfer under 11 U.S.C. § 547(c)(6).**

A trustee may not avoid a transfer "that is the fixing of a statutory lien that is not

avoidable under section 545 of this title[.]"  11 U.S.C. § 547(c)(6). In this case, the Oregon grain

producer's lien was in effect when Farmers Grain paid the Wheat Check and when it was cashed,

and thus the preference action must fail.

"***Title to goods cannot pass under a contract for sale prior to their identification

to the contract*** . . . ."  O.R.S. § 72.4010(1) (emphasis added). "Contract for sale" is further defined

in the UCC:

> In this chapter, unless the context otherwise requires, "contract" and
> "agreement" are limited to those relating to the present or future sale
> of goods. "Contract for sale" includes both a present sale of goods
> and a contract to sell goods at a future time. ***A "sale" consists in the***

**MEMORANDUM IN SUPPORT OF DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT - 19**

> *passing of title from the seller to the buyer for a price. A "present sale" means a sale which is accomplished by the making of the contract.*

O.R.S. § 72.1060 (emphasis added).

Defendant's position is that at all relevant times, Defendant had a storage relationship with Farmers Grain. But, *if* Farmers Grain ever owned the Wheat (as opposed to simply acting as a storing party or broker), it was not until Defendant ordered the sale of the Wheat for the agreed-upon price on January 14, 2017. Up until that point at the very least, Farmers Grain only provided storage for the Wheat. Thus, title would only have passed to Farmers Grain on January 14, 2017.

Significantly, if the Wheat was sold directly to Farmers Grain on January 14, 2017, then the Oregon grain producer's lien attached at that time. The grain producer's lien is set forth in O.R.S. § 87.755, which provides:

> (1) An agricultural producer that delivers or transfers grain *for consideration* has a lien on the inventory of the *purchaser* and proceeds received by the *purchaser* from the selling of the inventory.
>
> (2) The lien created by subsection (1) of this section attaches to the inventory and proceeds *on the date physical possession of the grain is delivered or transferred by the agricultural producer to the purchaser or an agent of the purchaser*. If grain is delivered or transferred by an agricultural producer to a person other than the purchaser for cleaning or storage, *the lien attaches when the grain is physically delivered or transferred to the purchaser or an agent of the purchaser for agreed consideration*.

O.R.S. § 87.755(1)-(2) (emphasis added). This type of lien is superior to other liens. O.R.S. § 87.755(3). The lien expires 180 days after the date the lien attaches if it is not extended by the filing of a notice of lien. O.R.S. § 87.762(1). Further, "wheat" is included within the definition of "grain" under the grain producer's lien statute. ORS 87.750(2).

**MEMORANDUM IN SUPPORT OF DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT - 20**

14955649.1

The language of the statute makes it clear that it focuses on the buyer-seller relationship as the means to determine when the lien attaches.  In this case, the statutory lien could not attach any sooner since Defendant retained ownership of the Wheat (and paid Farmers Grain storage fees) until Defendant gave the order to sell the Wheat on January 14, 2017.  It defies logic that Defendant could have a lien on something it owned.  The use of the terms "purchaser" and "consideration" indicate the meaning of the statute in that regard.  Thus, the lien automatically attached, if ever, on the date the Wheat was sold—January 14, 2017. Farmers Grain cut the Wheat Check on the same day.

The Chapter 7 was filed by Farmers Grain on April 18, 2017.  However, the statutory lien, which made Defendant a fully secured creditor (if a creditor at all) was in effect when the Wheat Check was paid. Thus, the Wheat Check is not subject to the voiding action brought by the Trustee.

> **E.**     **If Defendant became a creditor of Farmers Grain, Defendant is permitted to retain the Wheat Check, which was paid by Farmers Grain in the parties' ordinary course of business and is not an avoidable transfer under 11 U.S.C. § 547(c)(2).**

The "ordinary course of business exception" is set forth in 11 U.S.C. 547(c)(2), which provides:

> **(c)** The trustee may not avoid under this section a transfer--
> **...**
> > **(2)** to the extent that such transfer was in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee, and such transfer was--
> > > **(A)** made in the ordinary course of business or financial affairs of the debtor and the transferee; or
> > > **(B)** made according to ordinary business terms;

11 U.S.C. § 547(c)(2). "Defendant need only prove one of the two alternatives under § 547(c)(2)."

*In re Epic Cycle Interactive, Inc.*, No. ADV 11-90111-CL, 2014 WL 2567170, at *13 (Bankr. S.D.

**MEMORANDUM IN SUPPORT OF DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT - 21**

14955649.1

Cal. June 6, 2014). "Whether a transaction qualifies as ordinary involves a detailed factual

analysis." *Id.*

### 1. Defendant meets the Section 547(c)(2)(A) factors based on the parties' Storage Procedure history.

With respect to Section 547(c)(2)(A), courts consider:

> 1) the length of time the parties were engaged in the transactions at issue; 2) whether the amount or form of tender differed from past practices; 3) whether the debtor or creditor engaged in any unusual collection or payment activity; and, 4) whether the creditor took advantage of the debtor's deteriorating financial condition.

*Id.* at *14 (Bankr. S.D. Cal. June 6, 2014) (quoting *Wood v. Stratos Prod. Dev., LLC* (*In re Ahaza*

*Sys., Inc.*), 482 F.3d 1118, 1129 (9th Cir. 2007)); *see In re Ahaza Sys., Inc.*, 482 F.3d at 1124 ("In

other words, to determine what is "ordinary" among parties who have interacted repeatedly, we

inquire into the pattern of interactions between the *actual* creditor and the *actual* debtor in question,

not about what transactions would have been "ordinary" for either party with *other* debtors or

creditors.") (emphasis in original).

These factors weigh in favor of Defendant's position. As to the first factor,

Defendant has set forth the Storage Procedure used between Defendant and Farmers Grain for

years. Defendant Dec., ¶¶ 2-7.  In particular, Defendant delivered wheat and other commodities

for storage to Farmers Grain for two years.  Defendant Dec., ¶ 2. The Storage Procedure was

invariably used between the parties, and Farmers Grain paid Defendant at the time a given

commodity was sold.  Defendant Dec., ¶¶ 3-7.

As to the second and third factors, consistent with the past dealings between

Defendant and Farmers Grain, the Storage Procedure was used with respect to the Wheat and the

Wheat Check. Defendant Dec., ¶¶ 8-24. Defendant's testimony is supported by Mr. Millsap's

testimony. *See generally* Millsap Dec. Thus, the form of tender (the Wheat Check) did not differ

**MEMORANDUM IN SUPPORT OF DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT - 22**

14955649.1

from past practices, and there was no unusual collection or payment activity; instead, the parties

followed their usual Storage Procedure process with respect to the Wheat.  As to the fourth factor,

there is no evidence that Defendant took advantage of Farmers Grain's financial situation. Thus,

consideration of these factors demonstrates the Wheat Check was made in the ordinary course of

the parties' business.

> **2.      Defendant meets the Section 547(c)(2)(B) factors based on the commonly used Storage Procedure by Farmers Grain.**

With respect to Section 547(c)(2)(B)—the "ordinary business terms" prong—

courts have interpreted that subsection " to mean that the payment must be 'ordinary in relation to

prevailing business standards.'" *In re Jan Weilert RV, Inc.*, 315 F.3d 1192, 1197 (9th Cir. 2003),

*amended*, 326 F.3d 1028 (9th Cir. 2003) (quoting *In re Food Catering & Hous., Inc.,* 971 F.2d

396, 398 (9th Cir. 1992)). To apply the "ordinary business terms" prong, "the court must look to

'those terms employed by similarly situated debtors and creditors facing the same or similar

problems. If the terms in question are ordinary for industry participants under financial distress,

then that is ordinary for the industry.'" *In re Jan Weilert RV, Inc.*, 315 F.3d at 1197 (quoting *Arrow*

*Electronics, Inc. v. Justus (In re Kaypro)*, 218 F.3d 1070, 1074 (9th Cir. 2000)).

The Ninth Circuit has further explained:

> [A]lthough in applying § 547(c)(2)(C) "the court must look to those
> terms employed by similarly situated debtors and creditors facing
> the same or similar problems," creditors are not required to prove a
> particular uniform set of business terms, rather, "ordinary business
> terms" refers to the *broad range* of terms that encompasses the
> practices employed by those debtors and creditors, including terms
> that are ordinary for those under financial distress. ... Only a
> transaction that is so unusual or uncommon "as to render it an
> aberration in the relevant industry," ... falls outside the broad range
> of terms encompassed by the meaning of "ordinary business terms."

*In re Jan Weilert RV, Inc.*, 315 F.3d at 1198 (citations omitted) (emphasis in original).

**MEMORANDUM IN SUPPORT OF DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT - 23**

14955649.1

In this bankruptcy, the Trustee has alleged preference causes of action against five different Defendants in five different adversary proceedings, all of which are based upon nearly identical facts.  Contemporaneous with this filing, the defendant in each case has submitted a declaration, establishing an ordinary course of business (based upon the Storage Procedure).  The existence of five different declarations all alleging an identity of storage treatment under the Storage Procedure from Farmers Grain further supports the parties' ordinary business terms. The payment of the Wheat Check to Defendant was part of the ordinary process used by Farmers Grain at the conclusion of the Storage Procedure; it was not an "aberration" in the industry.

Defendant has met its burden on this defense under either the first or second prong. *See In re Epic Cycle Interactive, Inc.*, 2014 WL 2567170, at \*13 ("The defendant bears the burden of proof to establish the ordinary course defense by a preponderance of the evidence."). Assuming *arguendo* that the Trustee could establish preference liability, the longstanding, consistent dealings between Farmers Grain and the Defendant, and between Farmers Grain and similarly-situated defendant farmers, establishes the ordinary course of dealing defense to the Trustee's preference action.

> **F.      If Defendant became a creditor of Farmers Grain, Defendant is permitted to retain the Wheat Check, which was a contemporaneous exchange for new value and is not an avoidable transfer under 11 U.S.C. § 547(c)(1).**

The "contemporaneous exchange" defense is set forth in 11 U.S.C. § 547(c)(1), which provides:

> **(c)** The trustee may not avoid under this section a transfer--
> **(1)** to the extent that such transfer was--
> **(A)** intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and

**MEMORANDUM IN SUPPORT OF DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT - 24**

**(B)** in fact a substantially contemporaneous exchange;

11 U.S.C. § 547(c)(1). "'The rationale for the exception is that, because new value is given, a contemporaneous exchange does not diminish the debtor's estate.'" *In re Farson*, 387 B.R. 784, 796 (Bankr. D. Idaho 2008) (quoting *Endo Steel, Inc. v. Janas (In re JWJ Contracting Co., Inc.)*, 371 F.3d 1079, 1081–82 (9th Cir. 2004)). Defendant must show: "1) the parties intended the transfer of new value to be contemporaneous, 2) the exchange was in fact substantially contemporaneous, and 3) new value was given." *In re Power*, No. AP 16-08034-JDP, 2018 WL 1887318, at *5 (Bankr. D. Idaho Apr. 18, 2018) (quoting *Janas v. Marco Crane & Rigging Co. (In re JWJ Contracting Co., Inc.)*, 287 B.R. 501, 510 (9th Cir. 2002)).

As to the first element, the Storage Procedure set forth above demonstrates the parties' intent that the Wheat Check was made in exchange for the Wheat. As to the second element, the exchange of the Wheat Check for the Wheat was contemporaneous, as the Wheat Check was issued on the same day as the order to sell the Wheat. As to the third element, the sale of the Wheat on January 14, 2017 constituted new value given by Defendant.

Defendant meets the elements of the contemporaneous exchange defense. Given the contemporaneous exchange, the Trustee's preference action with respect to the Wheat Check must fail.

## V.      CONCLUSION

In order to prove a preference, the Trustee has the burden of proving all elements required by 11 U.S.C. § 547.  Here, the Trustee cannot prove that property of Farmers Grain was transferred to or for the benefit of a creditor, for or on account of an antecedent debt, and thus the preference action must fail. The relationship between Farmers Grain and Defendant was not a sales relationship; it was a statutory bailment relationship in which Farmers Grain stored Defendant's

**MEMORANDUM IN SUPPORT OF DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT - 25**

Wheat, and later sold it at Defendant's direction. And, the Wheat Check was not made for an antecedent debt.

Furthermore, even if the Trustee is able to establish every element of the preference action, Defendant has multiple defenses. First, if Farmers Grain became indebted to Defendant when the Wheat was sold on January 14, 2017 (making Defendant a creditor), Defendant had a statutory lien when the Wheat Check was cut and paid, which defeats the preference action. Second, the storage and sale of the Wheat, and the corresponding Wheat Check was consistent with the parties' course of business and thus was not a preference. Third and finally, the sale of the Wheat and the payment of the Wheat Check constituted a contemporaneous exchange, again defeating the Trustee's preference action.

For all of these reasons, Defendant respectfully requests that the Court grant its Motion for Summary Judgment.

DATED this 7th day of January, 2020.

GIVENS PURSLEY LLP


By  */s/ Randall A. Peterman*
    Randall A. Peterman – Of the Firm
    Melodie A. McQuade – Of the Firm
    Attorneys for Defendant

**MEMORANDUM IN SUPPORT OF DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT - 26**

14955649.1

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 7th day of January, 2020, I filed the foregoing **MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

**Jed W. Manwaring**
jmanwaring@evanskeane.com
valerie@evanskeane.com

*/s/ Randall A. Peterman*
Randall A. Peterman

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 27**

14955649.1