Randall A. Peterman, ISB No. 1944
Melodie A. McQuade, ISB No. 9433
GIVENS PURSLEY LLP
601 West Bannock Street
Post Office Box 2720
Boise, Idaho  83701
Telephone  (208) 388-1200
Facsimile  (208) 388-1300
rap@givenspursley.com
melodiemcquade@givenspursley.com
014448-0002

Attorneys for Defendant

UNITED STATES BANKRUPTCY COURT

DISTRICT OF IDAHO

| | |
|---|---|
| In Re:<br><br>FARMERS GRAIN, LLC,<br><br>　　　　　　　Debtor. | Case No. 17-00450-TLM<br>Chapter 7 |
| NOAH G. HILLEN, Trustee,<br><br>　　　　　　　Plaintiff,<br><br>vs.<br><br>CLARICH FARMS, LLC,<br><br>　　　　　　　Defendant. | Adversary No. 19-06009-TLM |

**STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

　　　　COMES NOW Defendant Clarich Farms, LLC ("Defendant"), by and through its counsel of record, Givens Pursley LLP, and hereby submits this Statement of Undisputed Material Facts in Support of Defendant's Motion for Summary Judgment.

**STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 1**　　　　　　　　　　14936022.1

**A.     Defendant's Past Business Relationship with Farmers Grain.**

1.    For years, Farmers Grain, LLC ("Farmers Grain") operated as a grain storage facility in Nyssa, Oregon. Declaration of Karl Clarich of Clarich Farms, LLC in Support of Defendant's Motion for Summary Judgment ("Defendant Dec."), ¶ 2.

2.    In general, Farmers Grain both purchased and stored commodities. Declaration of Chester Millsap in Support of Defendant's Motion for Summary Judgment ("Millsap Dec."), ¶ 2.

3.    Defendant delivered wheat and other commodities for storage to Farmers Grain from 2015 to 2017. Defendant Dec., ¶ 2.

4.    In each previous case where Defendant delivered a commodity to Farmers Grain for storage, the Defendant would be given a scale ticket, a final settlement statement, a check, and a storage invoice, all as identified below. Defendant would receive the scale ticket from Farmers Grain upon delivery of Defendant's commodity to Farmers Grain for storage, and Defendant would receive the last three documents when the storage relationship ended. In the past, those documents would be given to Defendant by Farmers Grain at the times set forth below. This happened invariably when Defendant delivered commodities for storage to Farmers Grain over a period of years. Defendant Dec., ¶ 3.

5.    As set forth in the Millsap Dec., Farmers Grain retained a copy of the scale ticket to document the delivered commodity. If the commodity was not previously contracted or priced upon delivery, then usually the commodity would be kept at Farmers Grain until the farmer directed its sale. If not priced within approximately 60 days of delivery a "storage" (a common grain elevator term) fee was assessed upon the unpriced commodity until such time as

the farmer ordered the sale. This is what occurred with respect to Defendant. Millsap Dec., ¶ 3; Defendant Dec., ¶ 4.

6. Nearly every day, Farmers Grain employee Chester Millsap tracked the market price for unpriced commodities that had been delivered to Farmers Grain. Farmers would then call Mr. Millsap from time to time to determine the price of their unpriced commodity on a given day. Millsap Dec., ¶ 4.

7. When Farmers Grain received a sell order from a farmer, normally in an email, Mr. Millsap would advise Galen Jantz. Based upon the sale order from the farmer, Farmers Grain would sell the commodity as directed, and would issue a final settlement statement (reflecting a summary of the scale tickets for the commodity, the sales price, and deductions for storage). Defendant would also receive the check and storage invoice. Defendant's receipt of those documents would end Defendant's business relationship with Farmers Grain as to the particular commodity. Defendant Dec., ¶ 4; Millsap Dec., ¶ 5.

8. During all of these transactions over an extended period of years, the same storage procedure ("Storage Procedure") would be followed in each case with respect to Defendant, as outlined above. It never varied, and it always involved the scale tickets, the final settlement statement, storage invoice, and the check, as indicated above. Defendant Dec., ¶¶ 5-6; Millsap Dec., ¶¶ 5-7.

9. Defendant understood the Storage Procedure to establish the parties' common agreement for storage dealings between Farmers Grain and Defendant. It was always the process used by Farmers Grain as to stored commodities with delayed pricing, and never varied

**STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 3**

14936022.1

during the years where Defendant stored commodities at Farmers Grain. Defendant Dec., ¶ 6; Millsap Dec., ¶ 7.

10. In all of such storage transactions, Defendant dealt with Mr. Millsap. In all such transactions the Storage Procedure was always used. Defendant Dec., ¶ 7; Millsap Dec., ¶ 9.

**B.    Defendant's Business Relationship with Farmers Grain in 2016-2017.**

11. During 2016, Defendant repeatedly delivered wheat ("Wheat") for storage to Farmers Grain on those dates set forth in the scale tickets ("Scale Tickets"). Those Wheat deliveries were for storage and not for sale. Defendant Dec., ¶ 9 and Ex. A.

12. The following is an example of one of the Scale Tickets:

```
Amalgamated - Farmers Grain LLC    P.O. Box 1568    Main St.    Nyssa, OR 97913
UNLOAD DATE: 07/20/2016            SCALE TICKET                TICKET #: 11000171
*NOT NEGOTIABLE*                                               *COMPUTER GENERATED*

TO:  Amalgamated - Farmers Grain, LLC        FROM:  Clarich Farms, LLC (CLAFA)
     Main St                                        4181 Riverview Pl
     Nyssa, OR  97913                               Parma, ID  83660

COMMODITY:      SWW Whole Wheat            DRIVER:    (OFF)  JACKIE
TICKET TYPE:    1 - TICKET (Inbound)       TRACTOR:   M5
LADING #:       PON       BIN:             TRAILER:                    AXLES:
CARRIER:                                   U.S. GRADE:

GROSS WEIGHT:   55,880 Lbs  *** MAN WT *** MOISTURE : 9.90          OPEN ____
TARE WEIGHT:    24,080 Lbs                 TEST WT  : 58.80     CONTRACT ____
NET WEIGHT:     31,800 Lbs ( 15.900 tons ) FM       : 0.00       STORAGE ____
GROSS UNITS:    15.90 TON                  DOCKAGE  : 0.00   PRICE LATER ____
NET UNITS:      15.90 TON                  DAMAGE   : 0.00    GRAIN BANK ____
                                                                  PRICE ____
COMMENTS:

Driver: Jackie Wk_    Date____
Received by_____    Date____
              * ORIGINAL *
```

Defendant Dec., Ex. A at FG 35835.

13. The Wheat was normally received by, and the Scale Tickets were normally issued to Defendant by Mr. Millsap on the date of delivery of the Wheat. They were in the form traditionally used by Farmers Grain over prior years. Defendant Dec., ¶ 9.

**STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 4**                      14936022.1

14.     Defendant's Wheat was stored at Farmers Grain until Defendant requested it be sold by Farmers Grain. Defendant Dec., ¶ 10.

15.     After storing the Wheat with Farmers Grain, Defendant would check the market price of wheat from time to time.  There were instances where Defendant would call Mr. Millsap for the price of wheat that he was quoting on behalf of Farmers Grain. Defendant normally requested Farmers Grain to sell the stored commodity by placing a phone call to Mr. Millsap. Defendant Dec., ¶ 11.

16.     Consistent with Defendant's usual practice, on January 14, 2017, Defendant telephoned Mr. Millsap, confirmed the market price for wheat, and asked that the Wheat be sold. Defendant Dec., ¶ 12.

17.     Within one or two days of Defendant's phone call requesting the sale of the Wheat, Defendant received confirmation that Defendant's Wheat had been sold, under the Final Settlement Statement, Check and the Storage Invoice as identified below.  The Final Settlement Statement confirms that the Wheat was sold on January 14, 2017.  Defendant Dec., ¶ 13.

18.     Defendant would always confirmed all of Defendant's Scale Tickets when the stored commodity was sold, and when Farmers Grain provided Defendant a final scale ticket settlement statement ("Final Settlement Statement").  The Scale Tickets and Final Settlement Statement were prepared by Farmers Grain, and both correlated in all respects. Defendant Dec. ¶ 14 and Exs. A and B.

19.     The Final Settlement Statement for the Wheat provided a listing of all Scale Tickets in detail, and reflected (a) the date of sale; (b) the gross proceeds from the sale of

the Wheat; (c) a deduction for storage costs and sales commission, marked "storage/sales commissions;" (d) a complete summary of all Scale Tickets, documenting all deliveries of stored wheat; (e) a final net sales price; and (f) other information. Defendant Dec., ¶ 14 and Ex. B.

20. The Final Settlement Statement for the Wheat demonstrates that the gross sales price of the Wheat was $66,816.13, and the storage/commission costs were $1,586.19, for a "net value" of $65,229.94. The Final Settlement Statement for the Wheat contained a summary at the end of the document, as follows:

| Net TON Paid: 594.82 | |
|---|---|
| Settlement Summary | |
| Gross Owed | $66,816.13 |
| Discount | $0.00 |
| Drying | $0.00 |
| Storage / Serv | $1,586.19 |
| Sales Tax | $0.00 |
| Check-Off | $0.00 |
| Excise/Indemn | $0.00 |
| Advances | $0.00 |
| Freight | $0.00 |
| Other Charges | $0.00 |
| **Net Paid** | **$65,229.94** |
| **Check Number** | **9179** |

Defendant Dec., ¶ 14 and Ex. B at DEFENDANT0002.

21. Defendant understood the Final Settlement Statement to be the final accounting of all income and expenses relative to the stored Wheat which had been, upon Defendant's direction, sold by Farmers Grain. Defendant Dec., ¶ 14 and Ex. B.

22. At the time of issuance of the Final Settlement Statement, Farmers Grain would also send Defendant a net proceeds check from the sale of the commodity. The check issued upon sale of a stored commodity would always reflect the gross sales price of Defendant's stored commodity, a charge for storage fees, and a charge for sales commission. The check would always

**STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 6**

14936022.1

reflect the net value of the stored commodity that had been sold at Defendant's direction. Defendant Dec., ¶¶ 16, 18.

23. Consistent with that practice, Farmers Grain sent Defendant a check dated January 14, 2017, in the amount of $65,229.94 for the sale of the Wheat ("Wheat Check"), numbered 9179 consistent with the check number identified on the summary shown above. The Wheat Check contains a reference, inserted by Farmers Grain, which reads: "2016 Wheat Settlement 726 16W 1192." Defendant Dec., ¶ 16 and Ex. C.

24. When Defendant received a check from Farmers Grain for the sale of any commodity, Defendant would generally cash it within a period of several days from receipt thereof. Defendant Dec., ¶ 17.

25. Consistent with Defendant's deposit practice, the Wheat Check cleared the account of Farmers Grain on January 23, 2017. Declaration of Randall A. Peterman in Support of Motion for Summary Judgment, Ex. A.

26. Consistent with the Storage Procedure, at the time of issuance of the Final Settlement Statement for the Wheat, Farmers Grain also sent Defendant a storage invoice entitled Wheat Settlement, summarizing the storage charges for the Wheat, which were deducted from the gross price for the Wheat when it was sold ("Storage Invoice"). Defendant Dec., ¶ 20 and Ex. D.

27. Defendant's receipt of the Final Settlement Statement, Storage Invoice, and Wheat Check terminated Defendant's relationship with Farmers Grain as to the storage and later sale of the Wheat. Defendant Dec., ¶ 22.

**STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 7**

14936022.1

28. Defendant always understood the commodities stored at the Farmers Grain storage facility to be Defendant's property, so long as Defendant paid storage fees for it. No one at Farmers Grain ever said that the commodities belonged to Farmers Grain. Defendant was never asked by Farmers Grain to pay any storage fees until the eventual sale of the commodity at the end of the process, when the Final Settlement Statement and Storage Invoice were issued, reflecting storage charges. Defendant Dec., ¶ 24.

29. The Storage Procedure was used not only in the storage of the Wheat, but was invariably used in storage relationships between Farmers Grain and Defendant in years past. Defendant Dec., ¶ 5; Millsap Dec., ¶¶ 7, 9.

30. Defendant heard nothing regarding the storage and sale of the Wheat until the above-captioned adversary proceeding was filed. Defendant Dec., ¶ 23.

**C.     Procedural History of this Bankruptcy and Adversary Action.**

31. Farmers Grain filed a Chapter 11 bankruptcy petition on April 18, 2017. 17-450-TLM, CR 1.

32. On August 3, 2017, Rabo filed a motion to convert the case to a chapter 7, and to dismiss or appoint a chapter 11 trustee (17-450-TLM, CR 74), which was granted by the Court on August 15, 2017 (17-450-TLM, CR 91).

33. Noah Hillen was then appointed as the Chapter 7 trustee ("Trustee"). 17-450-TLM, CR 93.

34. There ensued substantial activity in the Chapter 7 case, involving assumption and rejection of executory contracts, sale of real and personal property assets, and a Bankruptcy Code Section 557 proceeding. The Trustee retained with court approval two different attorneys Joseph Meier (17-450-TLM, CR 98), then later Jed Manwaring (17-450-TLM, CR 265),

an accountant Roger Clubb (17-450-TLM, CR 149) and a financial analyst, Maggie Lyons (17-450-TLM, CR 218). All such professionals were paid from estate assets.

35. The Trustee filed a motion to approve his Section 557 report in the Farmers Grain bankruptcy. 17-450-TLM, CR 238. That motion was granted.

36. In the Section 557 proceeding the Trustee distributed millions of dollars of grain or the proceeds of grain to different farmers. 17-450-TLM, CR 246.

37. On March 15, 2019, the Trustee filed his Complaint in the above-captioned adversary proceeding. CR 1.

38. On March 19, 2019, the Trustee filed his First Amended Complaint. CR 6. The sole cause of action in the Amended Complaint is a preference voiding action, related to Farmers Grain's payment to Defendant of the Wheat Check.

39. On June 28, 2019, Defendant filed its Amended Answer to First Amended Complaint. CR 15.

DATED this 7th day of January, 2020.

GIVENS PURSLEY LLP


By  /s/ Randall A. Peterman
    Randall A. Peterman – Of the Firm
    Melodie A. McQuade – Of the Firm
    Attorneys for Defendant

## CERTIFICATE OF SERVICE

      I HEREBY CERTIFY that on the 7th day of January, 2020, I filed the foregoing **STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

**Jed W. Manwaring**
jmanwaring@evanskeane.com
valerie@evanskeane.com

                                                     */s/ Randall A. Peterman*
                                                     Randall A. Peterman