**Jed W. Manwaring ISB #3040**
**Scott R. Rowley, ISB No. 9808**
**EVANS KEANE LLP**
**1161 W. River Street, Suite 100**
**P. O. Box 959**
**Boise, Idaho  83701-0959**
**Telephone:  (208) 384-1800**
**Facsimile:   (208) 345-3514**
**E-mail:  jmanwaring@evanskeane.com**

**Attorneys for Trustee, Noah G. Hillen**

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF IDAHO**

| | |
|---|---|
| In Re:<br><br>**FARMERS GRAIN, LLC,**<br><br>    Debtor. | Case No. 17-00450-TLM<br><br>Chapter 7 |
| **NOAH G. HILLEN, Trustee,**<br><br>    Plaintiff,<br><br>vs.<br><br>**CLARICH FARMS, LLC,**<br><br>    Defendant. | Adv. Pro. No. 19-06009-TLM |
| vs.<br><br>**DESERET FARMS, INC.,**<br><br>    Defendant. | Adv. Proc. No. 19-06010-TLM |
| vs.<br><br>**FRAHM FARM, LLC.,**<br><br>    Defendant. | Adv. Proc. No. 19-06011-TLM |

*MEMORANDUM IN SUPPORT OF TRUSTEE'S MOTION FOR SUMMARY JUDGMENT - 1*

| | |
|---|---|
| vs.<br><br>**GW FARMS LLC,**<br><br>　　　**Defendant.** | **Adv. Proc. No. 19-06013-TLM** |
| vs.<br><br>**PETERSON FARMS OF NYSSA, INC.,**<br><br>　　　**Defendant.** | **Adv. Proc. No. 19-06015-TLM** |

**MEMORANDUM IN SUPPORT OF
TRUSTEE'S MOTIONS FOR SUMMARY JUDGMENT**

**I. INTRODUCTION**

　　Plaintiff, Noah G. Hillen, Trustee, submits this Memorandum in Support of Plaintiff's Motion for Summary Judgment in addition to the concurrently filed Declaration of Trustee Hillen and the Plaintiff's Statement of Undisputed Facts pursuant to Local Bankruptcy Rule 7056.1. The Complaints seek judgments for preferential transfers against: Clarich Farms LLC ("Clarich Farms") for $65,229.94; Deseret Farms Inc. ("Deseret Farms") for $206,448.74; Frahm Farm, LLC ("Frahm Farm") for $65,777.48; GW Farms LLC ("GW Farms") for $179,758.66; and Peterson Farms of Nyssa, Inc. ("Peterson Farms") for $167,854.32.  These payments or transfers were each made in the spring of 2017 by the Debtor within 90 days of the filing of the Bankruptcy Petition. The transfers were in payment of antecedent debts of owing from the July and August 2016 deliveries to Debtor of Soft White Wheat ("SWW") from each Defendant.  Each of the elements of 11 U.S.C. §§ 547(b) and 550(a) have been established by the Plaintiff Trustee.   Trustee incorporates by reference the Plaintiff's Statement of Undisputed Facts filed concurrently.

## II. SUMMARY JUDGMENT STANDARDS

In adversary proceedings before this Court, the summary judgment standard set out in Federal Rule of Civil Procedure 56 applies. See Fed. R. Bankr. P. 7056; *Barboza v. NeFw Form, Inc. (In re Barboza)*, 545 F.3d 702, 707 (9th Cir. 2008). Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party, and a fact is "material" only if it might affect the outcome of the case under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The burden is on the moving party to show the absence of a genuine issue of material fact. *Id.* at 256-57.

In response to a properly submitted summary judgment motion, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial in order to withstand summary judgment. Fed. R. Civ. P. 56. In doing so, the nonmoving party may not rely on mere allegations or denials in its own pleading, but must produce specific facts, through affidavits or other admissible discovery material, showing a genuine issue for trial. *Id.*; *Barboza*, 545 F.3d at 707 (quoting *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991)). On summary judgment, inferences must be drawn from the underlying facts in the light most favorable to the nonmoving party. *Anderson*, 477 U.S. 242 at 255.

## III. FACTS AND PROCEDURAL HISTORY

In July and early August 2016, each of the Defendants delivered loads of SWW to Farmers Grain, LLC, the Debtor ("Farmers Grain" or "Debtor"). In the spring of the following year, 2017, each Defendant received a Final Scale Ticket Settlement Statement and check in payment for the

July and August 2016 deliveries. Each of the payments from the Debtor were made within the 90 days of the filing of the Bankruptcy Petition on April 18, 2017. Insolvency is presumed during those 90 days. For the Defendants' deliveries in 2016, the Oregon statutory lien claim of security on the SWW expired in January 2017, 180 days after deliveries in July and August 2016. The Defendants were unsecured at the time of the payments. Therefore, the transfers enabled the Defendants to receive more than they would have received in a chapter 7 bankruptcy liquidation. All elements for a preference claim under 11 U.S.C. §547(b) have been established.

## IV. ARGUMENT

### A. THE TRUSTEE HAS ESTABLISHED EACH ELEMENT OF A *PRIMA FACIA* PREFERENCE CLAIM UNDER BANKRUPTCY CODE §547(b).

In pertinent part, 11 U.S.C. § 547(b) provides:

> **(b)** Except as provided in subsections (c) and (i) of this section, the trustee may avoid any transfer of an interest of the debtor in property—
> **(1)** to or for the benefit of a creditor;
> **(2)** for or on account of an antecedent debt owed by the debtor before such transfer was made;
> **(3)** made while the debtor was insolvent;
> **(4)** made—
> **(A)** on or within 90 days before the date of the filing of the petition; […]
> **(5)** that enables such creditor to receive more than such creditor would receive if—
> **(A)** the case were a case under chapter 7 of this title;
> **(B)** the transfer had not been made; and
> **(C)** such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b). If a transfer is avoidable under Section 547, the trustee may recover the property that was transferred for the benefit of the estate. 11 U.S.C. § 550(a). The case law states:

> In order to avoid a transfer as a preference under the Code, the trustee must prove by a preponderance of the evidence that a transfer of property of the debtor occurred and that such transfer (1) was made to or for the benefit of the creditor; (2) for or on account of an antecedent debt; (3) while the debtor was insolvent; (4) within 90 days before the date of filing of the petition; and (5) enabled the creditor to receive

more than it would have received in a chapter 7 liquidation if the transfer had not been made.

*Elsaesser v. Cent. Pre-Mix Concrete Co. (In re Pioneer Constr., Inc*.), 01.2 I.B.C.R. 66, 76 (Bankr. D. Idaho 2001) (citing *Arrow Elecs., Inc. v. Justus (In re Kaypro)*, 218 F.3d 1070, 1073 (9th Cir. 2000). Plaintiff Trustee has the burden of proving the elements required to avoid a transfer under § 547(b). *Id*. If Trustee meets that burden, Defendants have the burden of proving, as affirmative defenses, one or more of the exceptions under § 547(c). *Id.* (citing *Elsaesser v. Am. Express Travel Related Servs. Co., Inc. (In re Taylor)*, 95 I.B.C.R. 216, 218 (Bankr. D. Idaho 1995); and § 547(g).

    **a. The transfers were of an interest of the Debtor in property.**

There is no dispute that the five checks from the Debtor were from, and cleared, the bank accounts of the Debtor, who owned the funds in the account. (Declarations of Peterman, Exhibits A; Declaration of Hillen ¶ 9.)

    **b. The transfers were for the benefit of creditors.**

Broadly defined, a creditor is an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor." 11 U.S.C. § 101(10). A claim is a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal equitable, secured, or unsecured...." 11 U.S.C. 101(5)(A).

Farmers Grain understood that after deliveries of the SWW in July 2016, it had to pay Defendants for the wheat, although the time of payment was deferred, and the price was yet to be determined by the market on that future date. (Plaintiff's Declaration of Millsap ¶¶ 5 & 6.) Therefore, after delivery, Defendants were creditors holding a claim for the delivered SWW, albeit unliquidated and undefined. In addition, the title to the SWW passed to Farmers Grain at delivery

and it owed an obligation for the SWW. The UCC states that title of goods passes to the buyer upon delivery of the goods.

> Unless otherwise explicitly agreed title passes to the buyer at the time and place at which the seller completes performance with reference to the physical delivery of the goods, despite any reservation of a security interest and even though a document of title is to be delivered at a different time or place….

OR. REV. STAT § 72.4010.

Between the time the SWW was delivered and later paid for, the separate Defendants were creditors of Farmers Grain. Title to the wheat passed when the wheat was delivered to Farmers Grain July and early August 2016. After transfer of title, Peterson Farms held a claim against, and right to payment from, Farmers Grain. Farmers Grain knew it had to pay and account for the delivered SWW to the Defendants. That is what makes the Defendants to be creditors. The Defendants as creditors holding claims, benefitted from the transfers.

### c. The transfers were on account of antecedent debts owed by Debtor.

"A debt is 'antecedent' if it is incurred before the transfer: the debt must have preceded the transfer." Collier on Bankruptcy, ¶ 547.03[3][a], p. 547-32 (16th Edition). When a creditor has a claim against a debtor, the debtor owes a debt to the creditor. *In re Bullion Reserve of North America*, 836 F.2d 1214, 1219 (9th Cir. 1988).

The spring 2017 checks by Famers Grain to the Defendants were on account of antecedent debts owed by Farmers Grain. Title to the SWW had passed from the Defendants to Farmers Grain when the SWW was delivered to Farmers Grain in July and August of 2016. Because the Defendants did not receive payment upon delivery, the Defendants had a claim to demand payment from Farmers Grain on a future date. After the SWW deliveries, the parties were in a debtor/creditor relationship. In the spring of 2017, and more than six months after title to each of

the SWW deliveries had transferred, Farmers Grain settled its antecedent obligation by issuing checks to the Defendants. (Declaration of Hillen, Exhibits 1-5.)

### d. The transfers were made while the Debtor was insolvent.

There is a presumption of insolvency for the 90 days before the filing of the bankruptcy petition. "For the purposes of this section, the debtor is presumed to have been insolvent on and during the 90 days immediately preceding the date of the filing of the petition." 11 U.S.C. § 547(f). Farmers Grain filed its petition for bankruptcy on April 18, 2018 and is therefore presumed to be insolvent beginning January 18, 2017. There should be no dispute of this element.

### e. The transfers were made within 90 days before the bankruptcy petition was filed.

The transfer must fall within the 90 days before the filing of the bankruptcy petition. 11 U.S.C. § 547(b)(4)(A). Ninety days before the bankruptcy petition, which was filed April 18, 2017, falls on January 18, 2017. The payments to Defendants, for the delivered SWW, were all made by check between January 19 and April 18, 2017, and therefore within the 90 days preceding the bankruptcy petition. (Declarations of Peterman, Exhibits A; Declaration of Hillen ¶ 9.) There should be no dispute of this element.

### f. The transfers enabled Defendants to receive more than they would if the case were under chapter 7 and the transfers had not been made, because Defendants' were not secured at the time of payments.

The final element of Section 547(b) is whether the transfer enabled the creditor to receive more than it would in a hypothetical chapter seven liquidation. Whether the creditor is secured or unsecured is the key question to determine whether Section 547(b)(5) is met. *In re Powerline Oil Co.*, 59 F.3d 969, 972 (9th Cir. 1995). "[A]s long as the distribution in bankruptcy is less than one-hundred percent, *any* payment 'on account' to an unsecured creditor during the preference period will enable that creditor to receive more than he would have received in liquidation had the

*MEMORANDUM IN SUPPORT OF TRUSTEE'S MOTION FOR SUMMARY JUDGMENT - 7*

payment not been made." *Id.* quoting *In re Lewis W. Shurtleff, Inc.*, 778 F.2d 1416, 1421 (9th Cir. 1985). In contrast, "[g]enerally, payments to a fully secured creditor will not be considered preferential because the creditor would not receive more than in a chapter 7 liquidation." Collier on Bankruptcy, ¶547.03[7], p. 547-43 (16th Edition). The Defendants' automatic security interest had expired by the time of payments in spring 2017.

Title to the SWW deliveries passed to Farmers Grain at the time of delivery pursuant to Oregon's UCC which states:

> **§ 72.4010. Passing of title; reservation for security; limited application of ORS 72.4010**
> Each provision of this chapter with regard to the rights, obligations and remedies of the seller, the buyer, purchasers or other third parties applies irrespective of title to the goods except where the provision refers to such title. In so far as situations are not covered by the other provisions of this chapter and matters concerning title become material the following rules apply:
> . . .
>
> (2) Unless otherwise explicitly agreed title passes to the buyer at the time and place at which the seller completes performance with reference to the physical delivery of the goods, despite any reservation of a security interest and even though a document of title is to be delivered at a different time or place; and in particular and despite any reservation of a security interest by the bill of lading:

ORS § 72.4010(2). There was no "otherwise explicitly agreed" arrangement between the Defendants and Farmers Grain regarding title. Therefore, title passed at the time of delivery. The Defendants were sellers and Farmers Grain was the buyer.

A seller of grain has an automatic security interest in the inventory and proceeds of the purchaser that arises upon delivery of grain and expires 180 days later. ORS §§ 87.755, 87.762. The security interest attaches on the date of delivery. The statute states:

> **§ 87.755. Grain producer's lien; date lien attaches; priority**
> (1) An agricultural producer that delivers or transfers grain for consideration has a lien on the inventory of the purchaser and proceeds received by the purchaser from the selling of the inventory.

*MEMORANDUM IN SUPPORT OF TRUSTEE'S MOTION FOR SUMMARY JUDGMENT - 8*

> (2) The lien created by subsection (1) of this section **attaches to the inventory and proceeds on the date physical possession of the grain is delivered or transferred by the agricultural producer to the purchaser or an agent of the purchaser.** If grain is delivered or transferred by an agricultural producer to a person other than the purchaser for cleaning or storage, the lien attaches when the grain is physically delivered or transferred to the purchaser or an agent of the purchaser for agreed consideration.

ORS § 87.755 (emphasis added).    This automatic lien expires 180 days after delivery:

> **§ 87.762. Filing notice of lien; duration of lien; contents of notice; notice to secured parties; effect of failure to give notice to secured parties**
> (1) A lien created under ORS 87.755 **expires no later than the end of the 180th day after the date the lien attaches**, unless the agricultural producer extends the lien by filing a notice of lien as provided in this section or by filing a notice of claim of lien under ORS 87.242. If the agricultural producer extends the lien, the lien expires no later than 18 months after the date the lien attaches.

ORS § 87.762(1) (emphasis added).

Other definitions and rules of the Oregon agricultural lien are as follows. An agricultural producer is a person that engages in the business of growing or producing agricultural produce. ORS § 87.700(2). The agricultural producer's lien on grain delivered to the purchaser is in the amount of the contract price, or if the parties had not agreed on a contract price, it is for the reasonable value of the produce. ORS § 87.705(1). The agricultural producer does not need to file notice to perfect the lien. ORS § 87.705(2). The lien automatically attaches to the purchaser's inventory, and proceeds of the inventory, when physical possession of the grain is transferred. ORS § 87.755(2). "If grain is delivered or transferred by an agricultural producer to *a person other than the purchaser* for cleaning or storage, the lien attaches when the grain is physically delivered or transferred to the purchaser or an agent of the purchaser for agreed consideration." (Emphasis added) *Id*. The producer's lien on grain expires 180 days after attachment of the lien. ORS § 87.762(1). The producer has the option to extend the lien, but only by filing a notice of lien. *Id*.

In the present case, Farmers Grain knew it was the purchaser of the SWW at the time of deliveries because it had to pay for the SWW at a future date. That obligation was the consideration. In fact, the deliveries of SWW were not stored, but immediately began to be re-sold by Farmers Grain to buyers in the Tri-Cities area. (Plaintiff's Declaration of Millsap, ¶¶ 5-7; Declaration of Hillen, Exhibit 8.) In July and August 2016, Defendants made their final deliveries of SWW to Farmers Grain. Pursuant to the UCC, title to the wheat passed to the Farmers Grain when the "seller complete[d] performance with reference to the physical delivery of the goods…." ORS § 72.4010(2). According to ORS § 87.755(2), the Defendants' liens on the inventory and proceeds of Farmers Grain attached on in July and early August 2016, when the SWW was delivered to Farmers Grain. Because the SWW was delivered to the purchaser, and was not delivered to someone solely for storage, the lien attached the on date that physical delivery was completed, in July and August 2016. Per ORS § 87.762(1), the liens expired 180 days later, each in January 2017. None of the Defendants extended their liens by filing a notice with the Oregon Secretary of State as prescribed in ORS § 87.762(1). (Declaration of Hillen, ¶15.)

The transfers from Farmers Grain occurred after the liens had expired. The checks from Farmers Grain to the Defendants all cleared from Farmers Grain's account after the Oregon statutory liens had expired in January 2017, all within the 90 days before Farmers grain petitioned for bankruptcy.

This bankruptcy case will not provide a 100% dividend to unsecured creditors. (Declaration of Hillen ¶13.) Therefore, the Defendants obtained more recovery through the transfers/payments than they would have received in a Chapter 7 liquidation, had they not received the payments.

**B. THE TRUSTEE IS ENTITLED TO A JUDGMENT AGAINST EACH DEFENDANT IN THE AMOUNTS OF THE CHECK TRANSFERS UNDER BANKRUPTCY CODE 550(a).**

Having established all elements under 11 U.S.C. §547(b) to avoid the transfers, Plaintiff Trustee is entitled to recover a judgment against each Defendant for the amount of the check received. The applicable section states:

> **§ 550. Liability of transferee of avoided transfer**
> (a) . . . to the extent that a transfer is avoided under section … 547 … of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—
> (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made.

Therefore, Trustee requests that a judgment in the respective amounts of the checks be entered against each Defendant.

## CONCLUSION

Plaintiff respectfully requests this Court for an entry of summary judgment in Plaintiff's favor. There are no genuine issues of material fact relating to the elements of the preference claim. The transfers were for the benefit of a creditor, on account of an antecedent debt for previously delivered SWW, made while the debtor was insolvent, made 90 days before the petition for bankruptcy, and because the Defendants were not a secured creditors at the time of the transfer, they received more than they would in a hypothetical chapter 7 distribution.

DATED this 15th day of January, 2020.

EVANS KEANE LLP

By     /s/ Jed W. Manwaring
Jed W. Manwaring, Of the Firm
Attorneys for Trustee

*MEMORANDUM IN SUPPORT OF TRUSTEE'S MOTION FOR SUMMARY JUDGMENT - 11*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 15th day of January, 2020, I served a copy of the foregoing on CM/ECF Registered Participants as reflected on the Notice of Electronic Filing.

**Melodie Annalise McQuade**  melodiemcquade@givenspursley.com, kendrah@givenspursley.com; kad@givenspursley.com

**Randall A. Peterman** rap@givenspursley.com, kad@givenspursley.com; wandawhite@givenspursley.com

                    /s/ Jed W. Manwaring
                    Jed W. Manwaring

*MEMORANDUM IN SUPPORT OF TRUSTEE'S MOTION FOR SUMMARY JUDGMENT - 12*